Whenever you are ready Mr. Kornbrath May it please the court my name is Brian Kornbrath I represent defendant Ronnie Belt the facts in this particular case are not contested I think the parties agree it was April 3rd 2013 the West Virginia State Police received an anonymous tip from a female. The female indicated that Ronnie Belt was either using or manufacturing methamphetamine at his residence in Camden, Ongole in West Virginia. Three West Virginia state troopers, Dornberg, Blake and Byer went over to the residence. They were in uniform there was at least two cruisers when they got to the residence well away from the residence arguably outside the in the yard by a four-wheeler was a young boy looked to be between 10 and 12 years old. Later the law enforcement found out he was 11 years old. They confirmed that this was the Belt residence. The child indicated yes it is Ronnie Belt's my dad. While trooper Dornberg could not remember the exact words he believes the child said my dad's inside come on in. When the police entered the home and requested permission to search the residence Ronnie Belt refused. However he was questioned by law enforcement and that information was used to obtain a search warrant which proved up the shake-and-bake methamphetamine production. When I prepared for oral argument and looked at the briefs again I really think I put the cart before the horse because there's a two-step process in this particular legal analysis. First have to parent or actual authority and then you get the consent. My brief starts out with consent but with the court's permission I'd like to touch upon a parent or actual authority. It's important because this court has not decided the issue. Every circuit though that has decided the issue has fact patterns where the minor at issue answers the door on the knock and that's really important. When law enforcement approaches the door they don't know whether it's the right residence. They don't know whether the target of the investigation is going to answer the door. If someone else answers the door they have to find out who that person is and that person may allow them into the home. Mr. Quimbrach if we agree with you that well let's assume that the entry was in violation of Fourth Amendment. Let's assume that. Okay. Don't we then have to come to terms with our opinion in Sedmon where on very similar facts the court found the purge of any initial taint by virtue of attenuation and the factors that we looked at in that here no overt police coercion almost there wasn't a significant passage of time but Mr. Sedmon motioned the the police in and Mr. Sedmon indicated in a in a conversation and did not ask the officers to leave. If the facts of Sedmon look very like at least to me the facts here so could you help me distinguish that case assuming right that we agree with you on the initial violation. Well I think one important point though is that in this case before questioning even began they asked for consent to search and here Belt clearly said no I refuse to give you consent to search so I think that's important. But then he also didn't I mean when they came in the house he didn't say what are you doing here. No. No he didn't he didn't. So how does that impact. It just shows a reticence on Belt's part to fully cooperate with the authorities but when when the consent unfortunately for him. I know. He then did. He capitulated. He did to a point he answered questions. It was rather vague what are you worried about a couple jars that stuff and that was about it but it was enough for them to get a warrant. He engaged what the court to a considerable extent based its discussion on and said when was the fact that he engaged in a conversation with the officers. And that happened here too but I mean it's pretty clear that but for the entry conversation would not have taken place. I think that's our strongest argument. Right and I'm perfectly happy to give you that the entrance was invalid. My only concern is what our case law seems to indicate establishes attenuation. My understanding is the case that if it was discovered by exploiting an illegal search derivative evidence has to be not necessarily as one derived from the other but is there a nexus if you will between the illegality and the evidence itself under the fruits of the poisonous tree doctrine. So that's the most we can hope for that it's not attenuated. It's immediately after the entry that the court is under this fact pattern assuming it was illegal. And again we can't argue that it wasn't a voluntary process. They didn't berate him. They didn't coerce anything out of him but and I think your argument is is a good one. It just I'm having difficulty with the language. Almost immediately after she entered the home any taint arising from the entry was attenuated by Sedman's consent to the conversation. That's a that's a pretty. I apologize can you spell Sedman? I may be mispronouncing. That's fine. S-E-I-D-M-A-N. I apologize to the court. I'm not familiar with the fact pattern but it does sound quite on point in the sense that there was little or no time before the officers went in. In that case it was I can say is that I think in our case the fact that he's saying no I'm not going to give you consent. Okay. So yeah so so they have to go down a different road and they did it in this case quickly thereafter. Does the court wish to hear on the consent issue? I think the Sanchez case out of the Tenth Circuit is instructive. That's where the 15 year old girl was home alone babysitting when the law enforcement knocked on the door and she allowed entry. In that particular case the Supreme Court of Madelon said a third party can. Oh sure sure sure but it has to be either actual which is mutual use or joint access or a parent authority. Is it reasonably objective for the officers to believe that this person can go in there? And and that's where we have problems because under either the actually apparent authority test assumption of risk is important. If Ronnie Belt's child answered that door he assumed the risk and the officers didn't know who was inside before they knocked. This case is an outlier in every other case when it comes to children because the officers confirmed before they reached the door that Belt was home. Belt was available to answer the door if he chose to rather than go to the door and deal with the adult. They relied on the child. We do argue in our brief that the district court paid scant attention if any to the child himself. The age of the child, maturity of the child, sophistication of the child. All of those were never brought out on the record and you know our West Virginia State Police officers they're an impressive lot. You know forest green uniforms, starch uniforms, 45 caliber pistols. An 11 year old boy and not one not two but three troopers standing by him. We argue that consent was pretty much a foregone conclusion. Unless the court has any other questions. Thank you very much. You have some time for rebuttal. Thank you. Mr. Warner. Thank you. Good morning and may it please the court. I am Stephen Warner from the Northern District of West Virginia and assistant US attorney stationed in Elkins. We argue that the district court did not clearly err in finding that the defendant's son had the authority to enter to consent to police entry of his home and that the district court did not clearly err in finding that the defendant's son did so voluntarily and he because the district court did that test based on the totality of the circumstances. I agree with Mr. Corbett that we found no Fourth Circuit case that decided the issue whether an 11 year old boy can consent to entry of a home. But I ask the court that we don't need a new rule on the subject because the totality of the circumstances test is a long-standing and well-founded rule across the country and in the Supreme Court. Other circuits have looked at. Where would this lead us if we go in the direction of where you're going with this? Well you have officers who receive a tip. The defendant is in this home manufacturing drugs or doing whatever and they approach this house ostensibly just to talk to him, but clearly they don't just want to talk to him, they really want to get in his house, but be that as it may. And they see a child, clearly a child, playing in a yard and the child says come in and they just walk in. And it would seem to me at that point, I mean where does that lead us? I mean and the reason I ask you that is I can very well see even the extension of Matlock, maybe even extension in terms of authority, maybe even going with the Sedlman about the taint business, but we got the Gooding case that I think backtracks that a little bit and then the question of whether how much was this voluntary after you got in the house, how much did he come forth with it and what circuits did he initially said no, he can't be here the whole bit. I just wonder where is it going to lead us? I mean in civil and criminal cases, but when I think about the fact that a child is in the yard, why would a police officer do anything other than that? If they want to get in the house, go there, wait till you see a child in the yard, and if the child beckons you to come in, walk in. Then everything in plain view is in order and if the person in the house then opens up, you can say Sedlman says no taint. Is that where we're headed or is that where we are? Judge, first of all, if I could say I respectfully disagree with some of your interpretation of the facts of this case. I know the child's 11 year old boy and I respect that. It is a young, it's an 11 year old. Tell me what I don't mean to disagree with. I want to know specifically which facts are you disagreeing with. You said the phrase playing in the yard. The evidence was he was at an all-terrain vehicle in the yard. He wasn't playing. I had a little time trying to figure out what that is. That's a motor vehicle. Isn't this out in the country? This is West Virginia, Judge. Yeah, that's what I thought. Everybody's got a four-wheeler. All of our 11 year olds have four-wheelers. Just a minute. Does he have anything to say about that characterization? I think he's probably right about that. But I want to tell you, it probably is true in eastern North Iowa. But I would add as it may, that can't turn anything, the fact that he's on AT&T. Are you saying he's more mature because of that? Well, I'm saying it's with the totality of the circumstances test for the district court to assess because at least four other circuits have found that a juvenile can consent. The district court in this case didn't. There's not a lot of facts on the record, but when you look at it. A juvenile that's already in the house. The other circuit. Not out in the yard. They don't even know really that the juvenile resides there. They know his father resides there. He says this is my father's house, but he doesn't, you don't know because he's out in the yard. They don't know whether he resides there or not. He could just be visiting for the weekend. And I just, how is it reasonable for an officer to think that it's okay to just walk in somebody's house because a child that they thought looked 10 years old said it was okay, come in. Certainly if it was that officer's child, they wouldn't be telling them it's okay to tell people to just come in the house. Well, respectfully judge, it's not that different from the knock on the door because the knock on the door cases, when the door opens, the police see the child and come in the house nonetheless. I would argue that's no different than the house. Either way, they know it's a child who permitted entrance. So I argue that those... Well, first those circuit cases are fine and all that. Yes, sir. But I'm not so sure they aren't distinguishable in some other facets. You've got at least one of the cases I remember that was a 14-year-old there. They were home by themselves, kind of in control. I don't know if we need to go there. I'm just dealing with a kid out in the yard. 10-year-old, 10, 11-year-old kid playing in the yard. Officers come up. They want to go in his house because that's what they got the tips with. There's nothing wrong with his house. And the kids that come in, they just walk in. They don't say to the kid, go get dad, bring him to the door. That frightens me. The fact that my kid could be out in the front, and I don't fortunately don't have a kid that young anymore, thank you, but it could be a great kid, out in the front playing, cases come in. Or it could have been a neighbor's kid who just happens to come in a house a lot. That happens in eastern North Carolina, probably happens in West Virginia. Neighbors sort of running out of the house the whole time. A kid says, oh yeah, he's inside, come on in. And you walk in. It certainly wouldn't be what officers would instruct their own children to do or what officers probably regularly instruct schoolchildren to do. Don't let people in the house without seeking your parents permission. But judge, if I could, going back to the facts, I respected the youth. I'm not trying to argue, except that this spills into the attenuation issue. The fact that the officers, once in the house, did nothing but go directly to the defendant and speak to him and did nothing else. Even though three officers were in this person's house, if they wanted to get in the house to search, they were in the house. That was pretty sacred for mine. I mean, to walk in a person's house. That's really, that's big stuff. You don't just walk in the house. You got a kid out in the yard. Why? If you want to speak to the dad, go get dad. Tell him to come to the door. Maybe something happens if that doesn't happen. But at least take some step before just walking into someone's home. People run around in their house naked. They do all kinds of stuff in the house. They don't expect to look around and see that a 10, 11 year old kid has brought police officers that follow a 10, 11 year old kid into a house. Can an ordinary citizen do it? Can someone on Of course, there's no Fourth Amendment violation, but there seems to be something wrong with that. I mean, is there going to be an allowability? He had consent to bring you in my house. I mean, it's troubling. It's troubling from a civil perspective, but I know in most states and civil law, a 70 year, 7, a child under 7 cannot be negligent. 7 to 14, as a presumption, cannot be. So there's a diminished level of capacity somewhere in there. Police officers know this and it I'm not asking you, I'm not trying to keep a police officer doing his job. It's just reasonable, just go ask him. It sounds like if you'd ask the daddy to come to the door, he'd go tell him anyway. I mean, this is not, I wouldn't say, I won't characterize the defense in this case, but he did make some pretty full-fledged statements. Well, Judge, I would just ask that it seems like the line of cases throughout the country are that it's a totality of the circumstances test best left for the was able to assess the demeanor of the witnesses who testified, in this case, the two officers. And after the magistrate... That's probably the way I differ a little bit. I totally agree, totality of the circumstances, but it does not ignore the officers. It does not ignore that in that totality of circumstances, it has to do with common sense and reasonableness and what's, I mean, here you've got a person who's actually doing something in the house, but in the vast majority of cases, they're just in their home living. They don't expect a 10, 11-year-old kid, officers, to follow them into the house. Walk through the house. Not just go to the door and yell out to anyone home or knock on the door. Just walk on in behind a 10-year-old kid, 11-year-old kid. Is that where we are now? But Judge, the strange thing about this case, then, is that the defendant, and I think it's a finding below, that the defendant himself didn't say or do anything to indicate that he had any the police into his house. Some parents might have such an objection, and you would hear it, but in this case, it seemed, as you read the transcript and listen to the testimony, almost normal. If you move, remove... He didn't have a chance. They're already in the house. What good is it going to do to say, I objected, before he got in the yard. What is that, an after fact? I didn't like the fact he did that. He's already done it, and he asked him, maybe asked him in the beginning, would you like for officers to walk in your house if your 10-year-old, 11-year-old son is playing out in the yard? He's probably going to say no. He didn't exactly have a fair chance to address that. I'm not sure that should be held against him. But I don't know if I could get too much further on this argument with you, Judge. I respect your opinion. I just would ask that you... Well, you can, I mean, for whatever it's worth, you can make the argument that he didn't ask the man to leave. He got... There is a... I think you have acknowledged that there's a problem with getting into the house. The facts here are that it seemed to have unfolded so quickly, the child, as I understand the facts, just said, come on in. And they just followed him in. Yes, ma'am. And it certainly would have been better for them to say, police officers entering your home, and I would be pretty terrified to look up and find three police officers walking into my kitchen. Certainly, there were better ways to go about this. I think you have to agree with that. Or do you not? I think they could have knocked on the door and waited for the dad to come. Yes, ma'am. But the phrase, you know, better ways gets close to the area of continuation. And I completely understand your point. I just think you take the expressed concern that you've heard as well. I was also interested, though, when I looked at four other circuits, the 10th, 11th, 6th, and 9th, and they found that even opening the door, and Mr. Kornbrath tried to make a distinction, and maybe he has, between opening the door and following the boy in. But in any case, the police know a child is letting them in the house. So why would four other circuits permit this? Why would four other circuits permit it? I read the case law, and I see that other circuits are permitting it. The test is totality. And I just ask that you let that decision be made by the District Court. Incidentally, I did note in the District Court order that is issued here today, the District Court did set out the totality of the circumstances test and listed factors to consider. I actually counted 15 factors Korn listed that I was going to consider in this fairly short order, but it listed 15 factors. And it did go through them. So I would ask that you... Tell me about the four circuits that allow this. Yes, sir. Yes, sir. In the 10th Circuit, a 14-year-old daughter in the case... What case are we talking? Gutierrez. Two-word case. The first word is G-U-T-I-E-R-E-Z. Also the 10th Circuit in the case of Sanchez, a 15-year-old babysitter. In the 11th Circuit... A 15-year-old babysitter? Yes, sir. Sitting in the house? Yes, sir. Okay. Not an 11-year-old child in the yard. I respect. Okay. In the 11th Circuit, it was a 9-year-old babysitter who was home by herself, by the way. I don't recall the facts if the babysitter the child was there or not. What's the next circuit? 11th Circuit has the case of Lentz, L-E-N-T-L-E-N-Z. That is cited in the record. That's where a 9-year-old lets the police in with a guardian at Litem who has been appointed to the 9-year-old. The 6th Circuit allowed consent by 12-year-old and 14-year-olds in the case of Clutter, the two boys together. And the 9th Circuit in the case of Davis is actually fairly similar to ours today where an 8-year-old the police went to the house just to do a knock and talk and the 8-year-old let them in. That's actually very similar facts and the district court in our case did rely on Davis in its order that's on issue today. So that's four other circuits as I looked at the law in assessing what the district court did in our case. I won't go through each one of them but there are some distinguishing facts in each one of those cases and I'm not sure they're material in terms of the difference here but it may well be that in the instance of maybe the Georgia case where they say okay it's Trump where you would think a salesman or someone else can walk in you can come into that area. But this is God, this is the kid who leads officers, uniformed officers and it is frightening to think about that possibility and we don't want, we want to get criminal conduct but there's just a way to do it and it just seems like to me they are ways less invasive to the average citizen and to the notions of the Fourth Amendment other than just, how many officers? Three. Three uniformed officers. Yes sir. Following a child into the bowels of a home right to the father right to me. You know, legal I'll think about it. I'm not saying I'm locked on it but I'm troubled about it. I hope you would reaffirm the totality of the circumstances test and let that age be a factor for the district court below to consider. Well, I will definitely accept the totality of the circumstances test. That's just the law. But I'm not so sure it leads, compels this result. Yes ma'am. Why would the government be in my view really pushing boundaries here of what appropriate and just except as Judge Duncan said, that's not good policy and argue attenuation. Judge, I do argue attenuation. It's in my brief and we've spent too much time already on consent. I do and I hope I haven't diminished my argument on attenuation. Because you do keep resisting the acknowledging that this is not good and the government did spend a lot of time in its brief and maybe in response to appellant's brief but in your argument pushing this, it's okay to follow a 10 year old into a house or 11 year old. Well, I don't think your attenuation argument is a good one. Thank you Judge and I only spent time because I think it may be the most difficult argument. I hope it doesn't diminish my attenuation case. No, I think, I don't, I certainly didn't need to criticize your argument. For me, it would have it would have gone over a little better if you would have acknowledged the concerns that were unanimously articulated. That was my only point and I didn't need to, I certainly didn't need to prejudge the disposition of the appeal. Well Judge, I'm a father too and I was a little I mean I saw the other circuits and the other circuits have permitted entry by a child and I couldn't find any circuit that said you can't. I think we understand that point and you just won't let it go. Thank you. In defendant's brief at pages 8, 9, and 10 we do distinguish the other cases across the country and they're important distinctions because in every case the juvenile is answering the door and that's important again for two reasons. It shows the officers that this young person has joint access, mutual use of the property because he or she is answering the door. Could I ask about that though? I mean and maybe I'm not remembering the facts but I thought that the child here led the officers in. So presumably the child here had access as well. Yes, in the sense that come on, come on follow me. But I mean is my recollection correct that he led them into the house. Yes, he led them into the house. But what's also important here too though is before he said follow me, come on in. Before he even said that, he said yes, my dad's inside. And that's where we try to draw a distinction with the other cases. When the officer's knocking on the door they don't know who's going to answer the door or what that person's connection is to the property. And actually it would have made more sense for the officers to knock just from the standpoint of what might have occurred on the other side of the door. I mean I think there's a... The even better procedure would be once the child says, my dad's inside, you know it's the right home and you know the adult's there, you bypass the juvenile because... That was what I was saying in my hypothetical. You just go to the door independently. So I think this is an important distinction in the sense that the officers have no uncertainty when they're well outside the home. They know the adult's present and they know they could go directly to deal with the adult. I know hours from now when myself and Mr. Warner get back to the office we're going to read Sedman, him with relish and me with trepidation, but when it comes to the attenuation doctrine I just want to point out that one of the factors this court cited in U.S. v. Gaines, 2012 published case, was the purpose of the flagrancy of the official misconduct. So to the extent you think that the officers crossed the line, that's an important factor that you can... I think one of the issues that we've not touched on and I think it's so important here, this is an 11-year-old child. It could have been a 4-year-old child, a 5-year-old child that's particularly bright to do the same thing. You go through the same analysis and say well does a child appear to have which we didn't do, we didn't go into the capacity of the child, the knowledge of it, we just know it's a child. That's correct. And it didn't have to be 11. It could have been 8. It could have been 6. It could have been 4. I don't know. But it's a frightening situation what we have here. And that's why I go back to this thing here. It is three uniformed officers with a specific purpose and they're not just coming up to try to get you in the paternal order of the police contribution or something like that. They are coming up to do something to this father and to try to get him incriminated and they do it with this kid in the yard. Now, whatever the law may be on that for attenuating circumstances, the fact of the matter is the way they got there was to use that child to get to it. And it was the child, again, in the yard. That may well be at the end of the day the way it's going to write, but it does not write very well the other way either. But, excuse me, maybe I misunderstood. In Sedmon, the court said there's a 4th Amendment violation. Assumed that there was a 4th Amendment violation. The question of attenuation arose because the court had found the initial violation. I guess I'm talking about degree. Right, and that was one of the factors. The court found there was a violation in that case initially and then they say no. Same situation. Right, so I think flagrancy matters here. Again, it's a child. I'm sorry, my time's up. It's a child in the yard. There was no assumption of risk. He didn't answer the door. Thank you. Mr. Warner? Oh, I'm sorry. You didn't cross appeal, did you? Okay, thank you. Did you have so much fun? Oh, yeah. Thank you very much. We will come down and go directly to our last case.
judges: Allyson K. Duncan, James A. Wynn, Jr., Stephanie D. Thacker